W. Willard **WIRTZ**, Secretary of Labor,
United States Department of Labor,
Plaintiff, Appellee,

v.

Lelio **MARINO** et al., Defendants,
Appellants.

No. 7159.

United States Court of Appeals
First Circuit.

Dec. 24, 1968.

As amended Feb. 26, 1969.

———◆———

Morris M. Goldings, Boston, Mass., with whom Mahoney, McGrath, Atwood, Piper & Goldings, Boston, Mass., was on brief, for appellants.

Robert E. Nagle, Atty., Dept. of Labor, with whom Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, and Albert H. Ross, Regional Atty., were on brief, for appellee.

Joel H. Golovensky, Harry H. Rains and Rains, Pogrebin & Scher, Mineola, N. Y., on brief for Consulting Engineers Council, U. S. A. and others, amicus curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an action instituted by the Secretary of Labor in the district court on behalf of an employee, one Dewing, to recover from Dewing's former employer Geomatra Engineering Company and its president, hereinafter collectively the defendant, payment for alleged overtime work. Suit was brought under section 16(c) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(c). The district court found for the plaintiff. On this appeal defendant attacks the court's findings for lack of clarity and sufficiency, an unsupportable contention we will not deal with,[1] and for legal incorrectness, which in one respect raises a difficult question. In addition, defendant invokes an unusual proviso in the statute which forbids the Secretary from bringing actions for an employee's back pay,[2] and recites that no court shall have jurisdiction over such action by the Secretary,[3] when the case involves "an issue of law which has not been settled finally by the courts."

The facts as found by the district court relating to the subject that we consider important[4] were these. Defendant was engaged in highway surveying for the Commonwealth of Massachusetts. It was called on to work at a particular job-site for a matter of weeks or even months, and then move to another part of the state. Dewing was a party chief in charge of a crew of three besides himself. He owned an automobile, while defendant owned none. The Commonwealth required that an automobile be furnished by the contractor for the transportation of personnel and the necessary surveying equipment. The equipment was owned by the defendant. Since Dewing had to drive from his home to the jobsite, a mutual arrangement was achieved under which he furnished his own car, picked up the other members of his crew at agreed places, and returned them at the end of the day before going home. Dewing carried defendant's equipment to and from the jobsite every day in his car. He was paid for eight hours, plus a flat $5 a day which the district court found was exclusively for the use of the car.[5]

1. We do have possible difficulties with a certain stipulation, see infra, n. 6, but this is not chargeable to the court.

2. The Secretary may, however, under section 17, sue to enjoin future violations without restriction.

3. We agree with the suggestion that this seeming redundancy in fact has a purpose, the prevention of a claim of waiver. See 63 Harv.L.Rev. 1078, 1079–80 (1950).

4. Defendant's contentions that Dewing, who was paid on an hourly basis for work actually performed, was an executive or a professional employee, and that the method of pay was dictated only by the nature of the work and the manner in which defendant itself was compensated, are too unfounded to warrant discussion.

5. Defendant contends that it should be regarded as having paid this $5 for Dewing's to-and-from the job driving time, and so be credited with it herein. Possibly the court should have found that some of the payment was for the driving, but certainly some was attributable to the use of the car at the job. Had the court so found, however, defendant would have been in serious trouble. Defendant would have been found to have recognized an obligation to pay for Dewing's driving time, but would have failed to pay the full amount, making its liability for the balance clear and eliminating any possible application of the proviso. 29 U.S.C. § 254(b) (1); Wirtz v. Sherman Enterprises, Inc., D. Md., 1964, 229 F.Supp. 746.

The court found that Dewing spent eight hours at the jobsite and charged the defendant with the full amount of an agreed stipulation of travel time as unpaid overtime.[6] Although, as will subsequently appear, we do not decide whether, on the merits, this decision was legally correct (the principal factual findings are not questioned), we must consider the merits up to a point in order to determine whether the issue "has * * * been settled finally by the courts" within the meaning of the proviso in section 16(c).

The so-called Portal-to-Portal Act, 29 U.S.C. § 254, exempts from the operation of the Fair Labor Standards Act time spent, "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities * * *." In deciding for the plaintiff the court found that "Dewing's undertaking to transport personnel and equipment * * * was the performance of a duty * * * necessarily incidental to the principal activity of his employment," rendering apposite the case of Steiner v. Mitchell, 1956, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267. *Steiner* does, of course, stand for the proposition that there is no exemption for "activities performed before or after regular hours of work * * * where they are an integral part of and indispensable to [the employees'] principal activities." 350

U.S. at 255, 76 S.Ct. at 335. The activities there, however, involving preshift and postshift clothing changes essential for safety, are far removed from the instant case. The question is not whether what might be thought preliminary and postliminary activities are to be included if they are integral and indispensable, but whether the present facts should be so described, particularly having in mind that under the Portal-to-Portal Act travel is expressly excluded no matter how indispensable it may be.

In this court plaintiff relies principally upon three cases. The first is D A & S Oil Well Servicing, Inc. v. Mitchell, 10 Cir., 1958, 262 F.2d 552. There defendant's employees, after reporting to defendant's place of business, drove large trucks containing heavy equipment, and pickup trucks carrying employees and occasionally equipment, from the place of business to a jobsite. Defendant paid for the drivers' time on the trip out, but not on the trip back. The court held that it was clear that the drivers of both types of trucks were "transporting equipment without which the principal activities could not be performed." 262 F.2d at 555. Interestingly enough, the court stated, "[I]f the trucks are used solely for the transportation of employees to and from their principal place of work, then, we think, the drivers are 'riding, or traveling' within the exclusion of Section 4 of the Act" [7] Id.

Next, and assertedly closer in point, plaintiff cites Wirtz v. Gilbert, D.R.I., 1967, 267 F.Supp. 69. There defendant,

---

6. The parties in this court, in response to a question from us, are in disagreement as to what travel was in fact covered by the stipulated total. Defendant says it is Dewing's total home-to-home time. The plaintiff says, probably correctly, as we see it, that in fact it was no more than from the first employee pickup to the last dropoff. Nothing in the court's opinion or in the briefs of the parties turns on the distinction, if any, and plaintiff's position was, and remains, that he is entitled to home-to-home time. We may add that it is clear that the stipulated figure is far in excess of whatever time Dewing spent going out of his way to accommodate his fellow employees.

7. We note this without suggesting that it might not be part of an employee's principal activity to transport other employees. Cf. Mitchell v. Stinson, 1 Cir., 1954, 217 F.2d 210. What the court in *D A & S Oil Well* indicated was that the Act does not apply when employees merely transport one another to work, without increasing their travel time. This is the situation here, at least when the employer is charged with the entire trip and not just the extra portion due to chauffeuring others. See n. 6, supra.

a survey engineer, employed assistants who, as in *D A & S Oil Well,* supra, drove defendant's trucks containing other employees and equipment, from defendant's place of business to and from the jobsite. All employees were compensated for their time spent on the road, but not, if the Act was applicable, at the required time and a half. The fact that some payment was made took the case out of the Portal-to-Portal Act exemption with which we are presently concerned. 29 U.S.C. § 254(b) (1). Without relying on this provision, however, the court held that since the driving employees had to travel themselves, and "[w]ithout such travel, said surveys could not have been made," and since in addition other employees and equipment had to be transported, the driving was an indispensable activity. With respect to this it must be said that insofar as the court felt that mere travel in itself could be indispensable it failed to consider the Act's specific exemption of travel time. The court did not cite *D A & S Oil Well* and overlooked the distinction observed in that case with respect to pure employee travel.

Finally, in Wirtz v. Sherman Enterprises, Inc., D.Md., 1964, 229 F.Supp. 746, the employees in question, as in the case at bar, carried equipment, but they were partially compensated for their travel time. Thus, the court was able to, and explicitly did, rely on 29 U.S.C. § 254 (b) (1). We note also that the travel, rather than from or to the employee's home, was from jobsite to jobsite.

■■■ With this background we turn to whether the Secretary has satisfied his jurisdictional burden of

showing that the law had "been settled finally by the courts." For this he has one court of appeals decision, D A & S Oil Well Servicing, Inc. v. Mitchell, supra, and one district court case, Wirtz v. Sherman Enterprises, Inc., supra. We believe we cannot consider Wirtz v. Gilbert, supra, since it was decided not only after the events leading to the present case, but after suit was brought.[8] It is difficult to think that these two, or even three, cases sufficiently point to the result that should be reached in the case at bar however lax a meaning is assigned to the phrase "settled finally by the courts." Certainly they do not if the proviso is given the meaning we believe reasonably apparent on its face and intended by Congress.

The Secretary states that the proviso's condition is met when the suit does not involve "new or novel questions of law," but is based on "existing legal precedents." This language is taken from the Conference Report explaining the meaning of the statutory phrase.[9] The Secretary seems to believe that once a general theory is established in an area, no new or novel question of law may arise within that field. However, the statement of a broad principle, whether by court or legislature, is only the first step in the formulation of precedent. We, of course, agree with the court in Wirtz v. Atlantic States Constr. Co., 5 Cir., 1966, 357 F.2d 442, 448, that if the principles have been "clearly revealed * * * a novel case is not contrived by urging incidental factual variations * * *." See also Mitchell v. C & P Shoe Corp., 5 Cir. 1961, 286 F.2d 109, 113–14 ("settled with reasonable finality * * * subject only to

---

8. The Secretary's reliance on this decision raises two interesting questions. Since the pre-existence of finally settling authority is jurisdictional, defendant asks how a condition precedent to suit can be met subsequently. A more sophisticated approach is suggested by considering the reason why Congress placed the limiting proviso in the Act. If, as we shall observe shortly, it was

to protect unwarned employers from unforeseeable suits by the Secretary, the judicial warnings should antedate the conduct for which the liability is asserted. On either analysis *Gilbert* came too late.

9. Conf. Rep. No. 1453, 81st Cong. 1st Sess. 32 (1949). See also, 95 Cong.Rec. 14938, 14939, 14941 (1949).

* * * ever-varying factual situations"); Mitchell v. Emala & Assoc., Inc., 4 Cir., 1960, 274 F.2d 781, 783 ("authoritative precedents [which] have fully settled the coverage question * * * [as against] merely incidental factual variations"); accord, Austford v. Goldberg, 8 Cir., 1961, 292 F.2d 234, 238–39. However, this merely states the issue; it does not resolve it. Whether factual variations are incidental, whether they fit within a particular principle or precedent, may well constitute a question of law.

If the proviso is to serve any purpose we believe that factual variations are not "incidental" if they present a question the answer to which would not be clear to a normally informed and properly advised employer. "Finally settled" is the opposite of doubt. So interpreted, the proviso fits a coherent statutory scheme. The Secretary of Labor is not an autonomous agency with powers of his own; enforcement of the Wage and Hour Act is limited to the courts. 29 U.S.C. §§ 216, 217. By the proviso Congress showed it did not wish to give the Secretary power to instigate or conduct litigation to obtain retrospective payments from employers who lacked adequate warning from existing, settled authority. Employers were not to be exposed to the powers of the government as a collection agency for liability innocently incurred, if indeed it was incurred, when the law's applicability to them was open to legitimate doubt. This is not unfair to the employee, who may still bring his own suit. It is not a handicap to the Secretary, who is unrestricted as to the future.[11] With this compromise the competing interests of all parties are partially recognized. We will not disturb it.

In the light of the Portal-to-Portal Act's elimination of travel to and from the job we do not find in the existing precedents any clear instructions advising the defendant that Dewing's driving to and from his home was compensable as an integral part of and indispensable to his principal activity. It is true that on part of his travel Dewing was carrying fellow employees. But where recovery is sought for the trip, including Dewing's own unavoidable travel as distinguished from such extra time as employee pickups required, D A & S Oil Well, supra, is opposed to plaintiff's position. Even if that case could be forgotten we could not find the law settled by the district court decision or decisions relied on by the Secretary.

A separate question is presented by the transportation of the equipment. This might well be resolved in the Secretary's favor if new equipment had been taken every day, or a different jobsite visited each day. However, the equipment so far as appears, and the jobsite, concededly, remained the same for weeks or months. Locked sheds existed at the jobsites. It is readily inferable that, except for the first and last trip, which may be regarded as de minimis, the equipment was left in the car as a matter of pure convenience. On the existing law as we view it the employer could well be startled to learn that the Secretary regarded the equipment's remaining in Dewing's car as he drove back and forth to work as indispensable activity, making it liable to pay for his driving time. We believe this precisely the type of unclear retrospective claim against which the proviso was intended to protect.

The judgment is reversed and the action is dismissed for want of jurisdiction.

---

11. The Secretary can obtain prospective rulings, see, 29 U.S.C. 217; Mitchell v. Lublin, McGaughy & Assoc., 1959, 358 U.S. 207, 214, 79 S.Ct. 260, 3 L.Ed. 2d 243; Mitchell v. Robert De Mario Jewelry, Inc., 1960, 361 U.S. 288, 294, 80 S.Ct. 332, 4 L.Ed.2d 323, in connection with which he may obtain an order as to future, only, payments. The employer is put on notice when such actions are brought.