Toshiyuki **TANAKA**, Plaintiff,

v.

**RICHARD K. W. TOM, INC.,** a corporation, Defendant.

**Civ. No. 2613.**

United States District Court
D. Hawaii.
May 21, 1969.

————◆————

Benjamin C. Sigal, Honolulu, Hawaii, for plaintiff; Shim & Sigal, Honolulu, Hawaii, of counsel.

Charles M. Tonaki, Honolulu, Hawaii, for defendant; Chuck & Fujiyama, Honolulu, Hawaii, of counsel

## DECISION

TAVARES, District Judge.

The above entitled matter came on regularly for trial before the court sitting without a jury, on the 7th day of May, 1969, at which time witnesses were duly sworn and testified on behalf of the plaintiff and the defendant, whereupon both parties rested their respective cases upon the evidence adduced by the aforesaid witnesses, the answers to interrogatories heretofore filed herein (R 17–158) and the written Stipulation be-

tween the parties (R 162–165) and other oral stipulations made at the trial. Thereafter and on the 8th day of May 1969 oral arguments were made by both parties with leave to file post-trial memorandums, which have now been received by the Court, and the matter having been submitted to the Court, and the Court being fully advised as to the law and the premises, finds for the defendant and against the plaintiff, and holds that the plaintiff shall take nothing and each party shall defray his own expenses had and incurred herein.

The Court makes the following findings of fact:

1. The plaintiff, Toshiyuki Tanaka brought this action to recover from the defendant, Richard K. W. Tom, Inc., a corporation, allegedly unpaid overtime compensation, an additional equal amount as liquidated damages, and a reasonable attorney's fee, under the provisions of the Act of June 25, 1938, c. 676, 52 Stat. 1069, 29 U.S.C. Sections 201–219, as amended, known as the Fair Labor Standards Act, hereinafter referred to as the Act.

2. Jurisdiction of this action is conferred upon this Court by Section 16 of the Act, 29 U.S.C.A. Section 216, and 28 U.S.C.A. Section 1337.

3. Plaintiff is a citizen and resident of the State of Hawaii, and resides in Honolulu, Hawaii.

4. Defendant is a corporation, and maintains its principal place of business at 1920–A Ualakaa Street, Honolulu, Hawaii, within the jurisdiction of this Court.

5. At all times hereinafter mentioned, the defendant was engaged in the business of construction or reconstruction or both, had a gross annual volume in excess of $350,000 from said business, and was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) (4) of the Act, 29 U.S.C.A. § 203(s) (4).

6. The business activities of the defendant corporation are related and are performed through unified operation or common control for a common business purpose, and constitute an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C.A. § 203(r).

7. Between January, 1964 and November, 1965, the defendant employed the plaintiff in the aforesaid enterprise. The services performed by the plaintiff were directly essential to that enterprise.

8. The plaintiff was engaged regularly and customarily in constructing, reconstructing, repairing, enlarging, or improving facilities engaged in commerce or in the production of goods for commerce, and in receiving, handling, and working on goods which had been transported, shipped, delivered and moved in commerce.

9. Plaintiff was a working foreman. He normally appeared at the defendant's yard about 6:30 A.M. on each work day and normally returned to the defendant's yard about 4:30 P.M. at the end of each work day.

10. Plaintiff normally drove a vehicle owned by the defendant each work day from the defendant's yard to the job site on which he was working, with other employees of the defendant as passengers, and drove said vehicle from the job site to the defendant's yard at the end of each work day, with other employees of defendant as passengers.

11. Plaintiff spent about 70% of his working time doing manual labor on the defendant's job sites.

12. Plaintiff was paid for his work on an hourly basis. Hhis regular straight-time hourly rate was $4.25 from October 1, 1964 to February 28, 1965; $4.45 from March 1, 1965 to August 29, 1965; and $4.55 from August 30, 1965 to the end of his employment with defendant. The hourly rates received by the plaintiff were determined by the collective bargaining agreement between defendant and the union representing the plaintiff.

13. It was stipulated and agreed by and between the parties during the trial

that a total of 227 working days were worked by the plaintiff between October 1, 1964 and September 25, 1965 on which days the plaintiff drove the vehicle provided by defendant to and from the job site where plaintiff was employed.

14. It was further agreed by the parties that the periods of employment, and the rate of pay claimed by the plaintiff for each period, respectively, are as follows: October 1, 1964 to February 28, 1965—90 days at $4.25 per hr. March 1, 1965 to August 29, 1965—118 days at $4.45 per hr. September 1, 1965 to September 25, 1965—19 days, $4.55 per hr.

15. The Labor-Management Agreement in force throughout the period involved herein set forth the number of hours of labor to be performed daily, and the hours of commencing and terminating work at the job site, and contained no provision for compensating employees covered thereby for traveling to and from the actual place of employment—i.e., the job site.

16. The custom and practice existing in Hawaii, within the construction or reconstruction business is that generally employment commences and terminates at the job site.

17. A custom and practice also exists within the construction or reconstruction business in Hawaii whereby employees designated as foremen are provided some mode of transportation by the employer and such foremen commonly transport themselves and incidental items of material to the job sites of their employment and just as commonly provide transportation to other employees who work under or with such foremen.

18. The pick-up truck provided to the plaintiff herein was provided as a convenience to plaintiff and others employed with him.

19. No sufficient showing was made, under the facts presented, that the use of the pick-up truck provided by the employer served any integral or indispensable function without which the employees could not have performed their principal activity. Transportation to and from work was its primary function.

20. Neither the plaintiff nor the other employees with whom he worked were required to report to the employer's yard prior to the commencement of the working day or after its termination at the job site.

21. Plaintiff was not required to keep the pick-up truck at the employer's yard, but was privileged to take it to his home if he so desired. The evidence showed that plaintiff found it more convenient for him to leave the truck at the yard.

22. Plaintiff was not required to service the truck at his employer's yard, but held a credit card issued to him by his employer whereby the servicing could be done at any place of plaintiff's choosing.

## CONCLUSIONS OF LAW

The Court finds that the activities for which plaintiff herein seeks compensation fall clearly within the provisions of 29 U.S.C.A. § 254, which provides as follows:

"(a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer."

\*       \*       \*       \*       \*       \*

Plaintiff has cited Walling v. Mid-Contingent Pipe Line Co., 10 Cir., 143 F. 2d 308 (1944) but that case is distinguished from the present case in that it arose prior to May 14, 1947, the effective date of Section 254, supra. It is further distinguished in that the facts in the Walling case clearly show that the employees were required to drive the employer's trucks and equipment from the place where work was performed to the employer's warehouses before employees were relieved of their duties.

Another case cited by plaintiff is that of Walling v. Anaconda Copper Mining Co., D.C.Mont. (1946), 66 F.Supp. 913. This case also arose prior to the effective date of Section 254, supra, but again is clearly distinguishable upon its facts. The employer there engaged in logging operations at some distance from its main camp and transported employees to and from their work in the woods, such transportation being necessary in the conduct of the employer's business.

Under the circumstances of this case, the pick-up truck was used primarily for the transportation of employees to and from their principal place of work and the foreman driver was "riding or traveling" within the exclusion of Portal-to-Portal Act, 29 U.S.C.A. § 254. The employer was under no obligation to furnish transportation and it was provided only for the convenience of the employees. Although no employee was specifically designated to drive, the vehicle was issued to the plaintiff as a foreman and served as something of a status symbol related to his position. Each employee, including the plaintiff foreman-driver, was free to take advantage of the convenience or to provide his own transportation. See D.A. & S. Oil Well Servicing, Inc. v. Mitchell, 10 Cir., 262 F.2d 552 (1958); Steiner v. Mitchell, 350 U.S. 247, 255–256, 76 S.Ct. 330, 335, 100 L. Ed. 267 (6th Cir.1956), and Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (9th Cir. 1956). See, also, Wirtz v. Flint Rig Co., 222 F.Supp. 707 (D.Mont.1963).

The foregoing being sufficient to dispose of the case, it is unnecessary to discuss the additional points raised by the parties.

This decision will constitute findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure. Counsel for defendant will prepare, serve and lodge an appropriate form of judgment.