**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 22-1613

———————————

RODNEY TYGER, on behalf of himself and those similarly
situated; SHAWN WADSWORTH, on behalf of
himself and those similarly situated,

                                             Appellants

v.

PRECISION DRILLING CORP.;
PRECISION DRILLING OILFIELD SERVICES, INC.;
JOHN DOES 1–10; PRECISION DRILLING COMPANY, LP

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:11-cv-01913)
Chief District Judge: Honorable Matthew W. Brann

———————————

Argued: March 8, 2023

Before: SHWARTZ, BIBAS, and AMBRO, *Circuit Judges*

(Filed: August 16, 2023)

———————————

Justin L. Swidler       **[ARGUED]**
SWARTZ SWIDLER
9 Tanner Street
Suite 101
Haddonfield, NJ 08033
    *Counsel for Appellants*

Erin Mohan          **[ARGUED]**
UNITED STATES DEPARTMENT OF LABOR
Division of Fair Labor Standards
200 Constitution Avenue NW
Room N-2716
Washington, DC 20210

Anne W. King
UNITED STATES DEPARTMENT OF LABOR
Office of the Solicitor
200 Constitution Avenue NW
Suite N-2119
Washington, DC 20210
    *Counsel for Amicus-Appellant Secretary of the*
    *United States Department of Labor*

Kimberly Cheeseman
Michael C. Crow      **[ARGUED]**
Katherine D. Mackillop
NORTON ROSE FULBRIGHT
1301 McKinney Street
Fulbright Tower, Suite 5100
Houston, TX 77010
    *Counsel for Appellees*

Sarah J. Miley
LITTLER MENDELSON
625 Liberty Avenue
EQT Plaza, 26th Floor
Pittsburgh, PA 15222
   *Counsel for Amicus-Appellee International Association of Drilling Contractors*

_____

OPINION OF THE COURT

_____

BIBAS, *Circuit Judge*.

Not all work clothes are alike. Some are simply aesthetic, reflecting the worker's own preference or an employer's fashion choice. But when the clothing is crucial to the work they do, workers ordinarily have a right to be paid for the time they spend changing.

Oil-rig workers claim that they should be paid for changing into and out of their protective gear. The District Court disagreed. But because it applied the wrong legal test, we will vacate and remand.

## I. BACKGROUND

### A. Congress has told us what activities workers must be paid for

The Fair Labor Standards Act sets minimum wages and overtime rates for work. 29 U.S.C. §§ 206, 207. The Supreme

3

Court interprets "work" broadly as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the [employer's] benefit." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (internal quotation marks omitted).

But not all work is compensable. Under the Portal-to-Portal Act, employers need not pay workers either for "traveling to and from the actual place [where they] perform[] the principal activity or activities [for which they are] … employed" or for "activities which are *preliminary to* or *postliminary to* said principal activity or activities." 29 U.S.C. § 254(a) (emphases added).

A "principal activity" is "the productive work that the employee is employed to perform." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014) (emphasis omitted). But "the term … [also] embraces all activities [that] are an *integral* and *indispensable* part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 252–53, 256 (1956) (internal quotation marks omitted) (emphases added); *accord IBP*, 546 U.S. at 37. To be integral, a task must be "intrinsic" to the principal activity. *Busk*, 574 U.S. at 33. And it is indispensable when a worker "cannot dispense" with doing it "if he is to perform his principal activities." *Id.*

In short, a task is compensable work if it is both integral and indispensable to the principal activity, but not if it is pre- or postliminary to that activity.

4

## B. The District Court ruled that the oil-rig hands need not be paid for changing gear

Precision Drilling is an oil company that employs rig hands to drill oil and gas. *Tyger v. Precision Drilling Corp.*, 594 F. Supp. 3d 626, 629 (M.D. Pa. 2022). Following workplace-safety regulations, it requires rig hands to wear protective gear: flame-retardant coveralls, steel-toed boots, hard hats, safety glasses, gloves, and earplugs. *Id.* And for good reason: the rig hands face risks of fire, crushed toes, flying debris, electric shock, and chemical exposure.

The rig hands want to be paid for the time they spend changing into and out of protective gear. (They also want to be paid for the time spent walking from the rigs' changing house to safety-meeting locations. But both sides agree that the walking claim rises and falls with the changing claim.) So they sued Precision under the Fair Labor Standards Act.

Precision argues that changing into and out of protective gear are "preliminary" and "postliminary" activities. So, under the Portal-to-Portal Act, they are not compensable. The rig hands counter that changing gear is both integral and indispensable to what the parties agree is their principal activity: drilling for oil and gas.

To resolve that dispute, the District Court borrowed a gear-changing test from the Second Circuit. *Tyger*, 594 F. Supp. 3d at 651. That test asks "whether the gear … guards against 'workplace dangers' that accompany the employee's principal activities and 'transcend ordinary risks.'" *Perez v. City of New York*, 832 F.3d 120, 127 (2d Cir. 2016) (quoting *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007)). The

5

District Court found that the risks here were "ordinary, hypothetical, or isolated" and that the gear's protection was "incomplete." *Tyger*, 594 F. Supp. 3d at 661. So the gear was neither integral nor indispensable to oil drilling under the Second Circuit's test, and the court granted summary judgment for Precision.

The rig hands now appeal. We review a grant of summary judgment de novo and draw all reasonable inferences in favor of the rig hands. *Crosbie v. Highmark Inc.*, 47 F.4th 140, 144 (3d Cir. 2022). Summary judgment is proper only when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a).

## II. DISTILLING THE RIGHT TEST

Our Court has not yet explained what makes an activity integral and indispensable to productive work, rather than preliminary or postliminary. So the District Court understandably looked elsewhere for guidance. Though we do not adopt the test that it used, we use this opportunity to clarify what it means to be integral and indispensable.

### A. Changing gear can be integral and indispensable

The statutory text suggests that at least some gear changing is integral and indispensable. Under a subsection of the Fair Labor Standards Act added after the Portal-to-Portal Act, if a collective-bargaining agreement "exclude[s] any time spent in changing clothes or washing at the beginning or end of each workday," then those activities do not count toward minimum wages or overtime rates. 29 U.S.C. § 203(*o*) (citing §§ 206, 207). As the Supreme Court has noted, this subsection would be superfluous if changing clothes (including protective gear)

6

were always a noncompensable preliminary activity. *See San-difer v. U.S. Steel Corp.*, 571 U.S. 220, 229 (2014); *Steiner*, 350 U.S. at 254–55.

Plus, the Court has held that changing into and out of some safety gear is integral and indispensable. It held as much for battery-plant workers who had to change into "old but clean work clothes" at the start of each shift and "shower and change back at the end." *Steiner*, 350 U.S. at 251, 256. Doing so, it reasoned, protected the workers from lead poisoning and sulfuric-acid burns. *See id.* at 249–51.

Thus, employers must sometimes pay workers for time spent changing into and out of protective gear. But which gear counts is murkier. The integral-and-indispensable "inquiry is fact-intensive and not amenable to bright-line rules." *Llorca v. Sheriff*, 893 F.3d 1319, 1324 (11th Cir. 2018). Still, we glean several guideposts from the statutes and caselaw that should guide trial courts.

### B. When changing gear is integral

Recall that changing into and out of gear is "integral" if it is "intrinsic" to productive work, rather than pre- or postliminary. *Busk*, 574 U.S. at 33. Though these terms seem abstract, statutory text and precedent give us three key factors to consider.

1. *Location*. It matters where workers change. The root word of "preliminary" and "postliminary" is *limen*, Latin for "threshold." *Preliminary*, *Oxford English Dictionary* (2d ed. 1989); *Postliminary*, *id.* So whether the changing takes place

before or after workers cross the workplace threshold is likely to be relevant.

We are not the first to draw this spatial connection. In her *Busk* concurrence, Justice Sotomayor connected "preliminary" and "postliminary" to "activities that are essentially part of the ingress and egress process." 574 U.S. at 38. And other courts have emphasized where the changing occurs. *Compare Perez v. City of New York*, 832 F.3d at 125 (reasoning that if changing must be done at work, "that suggests those tasks may qualify as integral and indispensable"), *with Llorca*, 893 F.3d at 1325–26 & n.5 (explaining that changing at home suggests otherwise), *and Bamonte v. City of Mesa*, 598 F.3d 1217, 1225–33 (9th Cir. 2010) (same).

The Department of Labor agrees. As it explains, changing "on the employer's premises" is integral when it "is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. §790.8(c) n.65. (We are not deferring to the Department's rule but simply find it persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).)

Changing can be intrinsic even if not every worker changes onsite. It is enough that the vast majority do so "regularly" out of practical necessity or in line with industry custom. *See Steiner*, 350 U.S. at 250–51 & n.1. Perhaps a butcher could drive home in an apron smeared with blood and fat, or a sports-team mascot could put on her Phillie Phanatic or Rutgers Scarlet Knight costume before boarding a commuter train. But we would not reasonably expect them to do so. And both the Fair Labor Standards and Portal-to-Portal Acts confirm that custom matters. *See* 29 U.S.C. §203(*o*) (recognizing that "custom or

practice" under a collective-bargaining agreement can make changing clothes noncompensable); §251(a) (criticizing courts for failing to read the statute in light of "long-established customs, practices, and contracts").

At bottom, the question is whether workers have a "meaningful option" to change at home. *Perez v. Mountaire Farms*, 650 F.3d 350, 368 (4th Cir. 2011). If they do not, changing is more likely to be integral to the work.

2. *Regulations*. *Steiner* and the Department's rule also consider regulations about changing clothes or gear. *Steiner* highlighted a state law that required employers to have showers if employees were "exposed to excessive heat, or to skin contamination." Tenn. Code Ann. §5788.15 (Williams 1952 Supp.); 350 U.S. at 250–51. And the rule says changing is more likely to be integral when "the changing of clothes on the employee's premises is required by law." 29 C.F.R. §790.8(c) n.65. So regulations, especially specific regulations, suggest that gear is integral.

3. *Type of gear*. Finally, courts should consider what kind of gear is required—by regulation, employers, or the work's nature. Again, the more specialized the gear, the more likely it is integral. *Perez v. City of New York*, 832 F.3d at 127. But even generic gear can be intrinsic. Precision tries to equate "intrinsic" with "unique" or at least "unusual." That is not so: balls are common to many sports but are still integral to them. Courts have rightly rejected Precision's suggestion to disqualify generic gear. *See Steiner*, 350 U.S. at 251, 256 (holding "old but clean work clothes" integral); *see also Perez v. City of New York*, 832 F.3d at 127 (rejecting a "categorical rule" that

9

"generic protective gear is never integral"); *Perez v. Mountaire Farms*, 650 F.3d at 366 (similar); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125 (10th Cir. 1994) (similar). We do too.

For similar reasons, we agree with the rig hands that even general workplace-safety gear requirements can be probative. The rig hands point to an Occupational Safety and Health Administration rule that requires employers to "provide[ ]" safety gear "wherever it is necessary [because] of hazards" in the workplace. 29 C.F.R. § 1910.132(a). Each employer must assess its own workplace risks and choose and require use of gear to protect against those hazards. § 1910.132(d)(1). So in following that rule, Precision's choices to provide gear and of what gear to provide link that gear to the work being done.

But none of this is to say that all uniforms are integral. At oral argument, the Department of Labor conceded that a barista's putting on a visor and apron would be "much closer to the line of not integral and indispensable." Oral Arg. Tr. 31:13–20. We need not draw that line today.

## C. When changing gear is indispensable

For an activity to be indispensable, Supreme Court precedent suggests that it need not be strictly necessary, just reasonably so. For instance, battery-plant workers *could* work with lead and sulfuric acid without showering and changing clothes. But doing so could burn them and make them sick. *See Steiner*, 350 U.S. at 249–50. And though butchers *could* cut meat with dull knives, doing so would "slow down production[,] affect the appearance of the meat …, cause waste[,] and make for accidents." *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956). But security screenings for Amazon warehouse

employees are not reasonably necessary for them to do their principal activities: "retriev[ing] products … and packag[ing] those products for shipment." *Busk*, 574 U.S. at 35. An activity is "indispensable … only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively." *Id.* at 37–38 (Sotomayor, J., concurring) (internal quotation marks omitted).

**D. The test's limits**

Our multifactor approach mirrors those of most of our sister circuits. *See Franklin v. Kellogg Co.*, 619 F.3d 604, 619–20 (6th Cir. 2010) (collecting cases). But the District Court chose the Second Circuit's approach, which focuses on whether protective gear guards against risks that "transcend ordinary" ones. *Perez v. City of New York*, 832 F.3d at 127 (quoting *Gorman*, 488 F.3d at 593). Among the circuits, that test is "unique." *Franklin*, 619 F.3d at 619. And it is far afield from the statutory terms "preliminary" and "postliminary" as well as the Supreme Court's terms "integral" and "indispensable." As explained above, those terms involve more than just specialized risks. So, like most of our sister circuits, we find the extraordinary-risk test too "narrow." *Perez v. Mountaire Farms*, 650 F.3d at 365; *see also Franklin*, 619 F.3d at 619.

Yet without that narrowness, Precision and its amicus fear that our decision will require paying *all* industrial workers for changing into *any* safety gear. Its fears are overblown; the *de minimis* doctrine stems the tide. Under that doctrine, when an activity "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

692 (1946). And the doctrine applies to changing clothes. *Id.* at 692–93. The Fair Labor Standards Act thus compensates workers only for having to "give up a substantial measure of his time and effort." *Id.* But just like the integral-and-indispensable inquiry, the *de minimis* doctrine is fact-specific, requiring "definite findings." *Id.*

### III. UNDER THE RIGHT TEST, THERE ARE GENUINE FACTUAL DISPUTES

The District Court erred in granting summary judgment because there are genuine factual disputes. For instance, how many rig hands change at work and why? Is changing on the rig "required by law, by [Precision's] rules …, or by the nature of the work"? 29 C.F.R. § 790.8(c) n.65. Or is it "merely a convenience to the employee"? 29 C.F.R. § 790.8(c). Is it industry custom for rig hands to change onsite? Does it take more than a *de minimis* amount of time? Appellees' Br. 45–46 (conceding that "there is a fact dispute over whether the time [spent changing] is *de minimis*"). The record leaves these questions open. A jury will have to decide whether the rig hands have "a meaningful option to don and doff their protective gear at home" and whether the time the rig hands spend changing is *de minimis*. *Perez v. Mountaire Farms*, 650 F.3d at 368. These disputes make summary judgment improper.

\* \* \* \* \*

Many of us, including judges, wear uniforms at work. But Congress has decided that only some of us get paid for the time we spend changing into and out of those uniforms. The test is whether changing is integral and indispensable to our

12

productive work. We can find out whether the gear is integral by looking at where we change, whether regulations or industry custom require changing into gear at work, and how specialized the gear is. And whether the gear is indispensable depends on whether it is reasonably necessary for doing the work safely and well. Because the District Court used a test that strayed too far from those factors, we will vacate and remand for trial.