Fox, and others, Plaintiffs-Appellants, v. GENERAL TELE-
PHONE COMPANY OF WISCONSIN, Defendant-Re-
spondent.†

Court of Appeals, District III

*No. 77–362. Argued September 19, 1978.—Decided October 13, 1978.*
(Also reported in 271 N.W.2d 161.)

† Petition to review denied.

For the appellants there was a brief and oral argument by *Larry W. Rader*, of Wausau.

For the defendant-respondent there was a brief by *James C. Herrick, Timothy D. Fenner* and *Axley, Brynelson, Herrick & Gehl*, of Madison, and oral arguments by *James C. Herrick* and *Timothy D. Fenner*.

Before Dean, P.J., Donlin and Foley, JJ.

FOLEY, J. Plaintiffs are forty-two employees of defendant, General Telephone Company, all of whom were subject to a collective bargaining agreement between the company and Communication Workers of America (CWA). They commenced this action for back wages for travel time in company trucks on interim weekends to and from the Wausau garage and outlying job sites.[1] Their claim is based on the terms of the collective bargaining agreement and on the provisions of the Fair Labor Standards Act. The trial court found the plaintiffs were not entitled to compensation for such travel time either under the contract or the terms of the FLSA.

The collective bargaining agreement dated January 24, 1974, which governs this dispute, provided:

---

[1] An "interim weekend" is a weekend between work weeks following the first trip to and last trip from a job site away from the Wausau headquarters.

*TRAVEL TIME*

Sec. 1.  Time worked shall be considered to include travel time from the designated reporting center to the job and travel time returning to the designated reporting center.

Sec. 4.  Employees traveling to Company schools or a job site within the operating area of the Company will travel on Company time for the initial trip to the school or job site and the last trip from the school or job site. Transportation will be provided by the Company for the interim weekend(s) unless the employee has elected the reimbursement option provided in Article XXIII, Section 1(b). Employees will travel on their own time and expense.

The language of Sec. 4 was changed by this agreement. It previously read:

Sec. 4.  Employees traveling to Company schools within the operating area of the Company will travel on Company time for the initial trip to the school and the last trip from the school.

Plaintiffs argue they should be paid for interim weekend travel time under Sec. 1 regardless of Sec. 4. They claim the agreement is ambiguous and subject to the interpretation that it left the previous travel time agreement unchanged. They also argue it would be a "subterfuge" to use Sec. 4 to exclude payment because the employees did not understand what the agreement said and thought they would be paid for interim weekend travel time. This argument incorrectly assumes that there is some duty on the employer to make sure the employees, represented by CWA, understood what the agreement meant.

We find that Sec. 4 specifically changed the former agreement in plain and unambiguous terms. It is our duty to construe the agreement as it stands giving effect

to the plain meaning of the language used.[2] The change in Sec. 4 of the 1974 agreement provides employees will travel on their own time. Travel time to and from job sites on interim weekends is therefore not compensable under the collective bargaining agreement. As to the "subterfuge" charge, the trial court found plaintiffs had not met the burden of proof necessary to estop the company from using Sec. 4 to deny travel time payments. This finding is not clearly erroneous and contrary to the great weight and clear preponderance of the evidence and therefore must be sustained on appeal.[3]

It is conceded, however, that if the provisions of the collective bargaining agreement are in conflict with the FLSA, the Act controls. The FLSA requires time and one-half for work over 40 hours per week with certain activities being excluded. The exclusion, 29 USCA Section 254 provides:

(a) . . . (No) employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee . . . overtime compensation, for or on account of any of the following activities of such employee . . . . :

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or post-preliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

In considering these exclusions, the United States Supreme Court stated in *Steiner v. Mitchell,* 350 U.S. 247,

---

[2] *Hanz Trucking, Inc. v. Harris Bros. Co., Crestline Division,* 29 Wis.2d 254, 138 N.W.2d 238 (1965).

[3] *Stevens Construction Corp. v. Carolina Corp.,* 63 Wis.2d 342, 217 N.W.2d 291 (1974).

(1956) that they were not intended to deprive employees of the benefits of the FLSA for activities performed before and after regular hours of work where the activities were an integral part of and indispensable to their principal activities.

In *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F. 2d 552 (10th Cir. 1958), the court recognized the difficulty in fixing any definite standard for determining what activities of an employee performed before and after hours of work were an integral part of and indispensable to his principal activities. The court concluded that each case must be decided upon its particular facts. The court then held compensable the driving of trucks to and from job sites because they carried equipment without which the principal activity could not be performed. The court added, however, that if the trucks were used solely for the transportation of employees to and from the principal place of work, then the employees would be "riding or traveling" within the exclusion.

Thus, the *D A & S* case makes clear that where the time spent is solely for the benefit of the employees, the exclusion applies. The question not answered is whether the exclusion can apply if there is any benefit to the company, no matter how small.

In *Dunlop v. City Electric, Inc.*, 527 F.2d 394 (5th Cir. 1976), the court addressed this question. The trial court in *Dunlop* had found some of the employee activities included within the definition of "principal activity" and the others not. It concluded that the time spent on activities within the definition were minimal. Relying on prior case law defining principal activity as "any work of consequence performed for an employer," the trial court concluded that the work required so little employee time as to be *de minimis* and therefore not compensable. It was not work of consequence.

The work involved in *Dunlop* included filling out daily time, material, supply, and cash requisition sheets; check-

ing job locations; removal of trash from trucks accumulated the previous day; loading of trucks with the materials needed for the day's jobs; fueling of trucks; and picking up plans for the day's jobs. The court on appeal construed the term "principal activity" liberally and found all of these activities included within the definition of "principal activity." Also, all clearly provided a benefit to the employer. The court then remanded the case to the trial court for further consideration of whether all of the activities required so little time as to be *de minimis*. By this remand, the court clearly recognized the principle that an employer may receive some benefit and an employee still not be entitled to compensation under the Act.

In the instant case the employees claim relies substantially on the fact they provided a number of benefits to the company by driving company trucks back and forth between the Wausau garage and outlying job sites. Bags of supplies left in the trucks during interim weekends while the trucks were parked at the Wausau garage were taken to job sites on Monday mornings. Trucks were on occasions gassed or washed by other employees during the interim weekends. If repairs were needed on trucks brought in on Friday afternoon, another truck would be taken on Monday morning. Sometimes waste that could not be disposed of at the job site would be returned in the trucks and would be unloaded over the weekend. Also, the trucks used by the employees contained equipment necessary to the employee's work at the job site.

Many of these activities, such as the washing or gassing of the trucks, required no time expenditure by the employees. In this respect, they differ from the activities considered in *Dunlop*. Still, some benefit was realized by the company as a result of having the trucks at the

Wausau garage so they could be washed or gassed. However, employer benefit, not requiring any employee time, would not under *Dunlop* make the preceding travel time compensable. Benefit to the company, therefore, is not the sole consideration in determining compensability. To be compensable, the test is whether there was "work of consequence" performed "for the employer."

In this case the only work which conceivably was of consequence and performed for the employer was the transportation of the trucks from one location to another. The amount of time consumed in performing any of the other tasks such as removing waste from the trucks is not established in the record. However, it is clear that such time would be *de minimis* and would not qualify as work of consequence. Regarding the transportation of the trucks, the trial court found this to be of no benefit to the company. This finding was based on the fact the trucks and equipment would have remained at the job sites following the initial trip had they not been used for the sole convenience of the employees in traveling back and forth. Additionally, the employees were not required to drive the trucks and could elect to travel in their personal vehicles. The trial court further found that the driving of the trucks was not motivated by any company purpose except the fulfillment of the company provided travel requirement in the collective bargaining agreement.

The driving of the trucks was therefore not an integral part of or indispensable to the principal activity or activities of the employees. These findings are not clearly erroneous and against the great weight and clear preponderance of the evidence. On the basis of such findings, the riding or traveling on interim weekends is within the

exception to the payment requirements of the Fair Labor Standards Act.[4]

At oral argument plaintiffs cited two additional cases, *Secretary of Labor, U. S. Dept. of Labor v. E. R. Field, Inc.*, 495 F.2d 749 (1974), and *Marshall v. R & M Erectors, Inc.*, 429 F. Supp. 771 (1977). The *Field* case is distinguishable because there was a finding that the essential purpose of the travel in company trucks was to transport tools and supplies to various job sites. The *Marshall* case held that where "work of consequence" is performed before travel commences the travel becomes subject to overtime pay. No doubt the same would be true where "work of consequence" was performed after the travel. However, the record in the instant case does not show any such "work of consequence."

The conclusion of the trial court that the travel of the plaintiff employees on interim weekends in company vehicles constituted "riding or traveling" to and from the actual place of performance of their principal activity or activities which they were employed to perform within the meaning of 29 USCA 254(a), and that such travel time was not compensable, is not clearly erroneous and against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

---

[4] In the case of *Tanaka v. Richard K. W. Tom, Inc.*, 299 F. Supp. 732 (D.C. Hawaii, 1969), a case similar on its facts to the instant case, the riding or traveling was also found to be within the exclusion.